# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

---

|  |  |
|---|---|
| **SAMI AMBAR,** | ) |
| | ) |
| *et. al.* | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **THE FEDERAL REPUBLIC OF GERMANY,** | ) |
| | ) |
| **Defendant.** | ) |

1:20-cv-03587-CKK

---

## DEFENDANT'S MOTION TO DISMISS FOR LACK OF
## SUBJECT MATTER JURISDICTION AND PERSONAL JURISDICTION

Walter E. Diercks, Esq.
Max Riederer von Paar, Esq.
RUBIN, WINSTON, DIERCKS, HARRIS
    & COOKE, LLP
1250 Connecticut Avenue, N.W., Ste 700
Washington, D.C. 20036
(202) 861-0870/(202) 288-4500
wdiercks@rwdhc.com

Attorneys for Defendant

Dated: June 21, 2021

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ......................................................................................... ii

DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER
JURISDICTION AND PERSONAL JURISDICTION ................................................1

MEMORANDUM OF LAW ......................................................................................1

The Alleged Facts Relevant to Defendant's Motion.......................................................1

ARGUMENT ...........................................................................................................2

     **I.**     The Complaint should be dismissed pursuant to Fed. R. Civ. P 12(b)(1) for lack of
     subject matter jurisdictions as the Defendant is immune under the FSIA's broad
     grant of immunity to foreign states. The expropriation in violation of international
     law exception to that broad grant of immunity does not apply in this case.............2

       A. The "Expropriation Exception" is Inapplicable .................................................4

          1.  Salo Feuerwerk was a German National at the Time of the Taking ......5

          2.  A Violation of Human Rights is not a Violation of International Law
              in the Context of the Expropriation Exception .....................................9

          3.  A Violation of a Treaty is not Sufficient to Establish a Violation of
              International Law under the Expropriation Exception........................10

          4.  The Complaint Fails to Sufficiently Allege the Presence of the
              Property or Property Exchanged for the Property in the United States
              in Connection with Commercial Activity in the United States by
              Germany.............................................................................................10

       B. The Complaint should be dismissed pursuant to Fed. R. Civ. P 12(b)(2) for
         lack of personal jurisdiction of the Defendant  ...............................................19

CONCLUSION........................................................................................................19

# TABLE OF AUTHORITIES

## CASES

*Argentine Republic v. Amerada Hess Shipping Corp*, 488 U.S. 428,
109 S.Ct 683, 102 L. Ed. 2d 818 (1989) ......................................................3

 BVerfGE 23, 98 BvR 557/62 (1968) ......................................................7

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co*., 137 S. Ct. 1312,
197 L. Ed. 2d 663, 2017 BL 143712, 2 (2017)....................................9, 11, 12, 13, 14, 16, 18, 19

*Chuidian v. Philippine Nat'l Bank*, 912 F.2d 1095 (9th Cir. 1990)................................................5

*De Csepel v. Republic of Hungary,* 859 F.3d 1094,
429 U.S. App. D.C. 342 (D.C. Cir. 2017)..........................................................10, 12 13

*De Sanchez v. Banco Central de Nicaragua*, 770 F.2d 1385 (5th Cir. 1985)................................5

*EIG Energy Fund IV, LP v, Petroleo Brasileiro, SA*, 894 F.3d 339 (D.C. Cir. 2020)..................12

*Fed. Republic of Germany v. Philipp*, ___ U.S. ___, 141 S. Ct. 703, 208 L. Ed. 2d 589, 2021 BL
36734 (2021) ....................................................................................5, 9, 10

*F. Palicio y Compania, S.A. v. Brush*, 256 F. Supp. 481 (S.D.N.Y. 1966) ...................................5

*Garb v. Republic of Poland*, 440 F.3d 579 (2nd Cir. 2006)............................................................18

 *I.T. Consultants, Inc. v. Islamic Republic of Pak.*, 351 F.3d 1184 (D.C. Cir. 2003) ...................18

*Ivanenko v. Yanukovich*, 995 F.3d 232 (D.C. Cir. 2021)................................................................10

*Maxwell v. Snow*, 409 F.3d 354 (D.C. Cir. 2005)...............................................................12, 13

*Nemariam v. Fed. Democratic Republic of Ethiopia,* 491 F.3d 470 (D.C. Cir. 2007). ..............3, 4

*Odhiambo v. Republic of Kenya*, 764 F.3d 31 (D.C. Cir. 2014)....................................................3

*Owens v. Republic of Sudan*, 864 F.3d 751, 779 (D.C. Cir 2017 ...................11, 12, 13, 14, 18, 19

*Reiss v. Societe Centrale Du Groupe Des Assurances Nationales*,
235 F.3d 738 (2d Cir. 2000)...........................................................................18, 19

*Republic of Austria v. Altmann*, 541 U. S. 677, 124 S. Ct. 2240, 159 L. Ed. 2d 1 (2004) .............9

*Rukoro v. Fed. Repub. Of Germany, 363 F.Supp. 3d*, 436 (S.D.N.Y. 2019)................................12

*Rukoro  v. Fed. Republic of Germany*, 976 F.3d 218 (2nd Cir. 2020)...................13, 14, 16, 17, 18

*Saudi Arabia v. Nelson*, 507 U.S. 349, 123 L. Ed. 2d 47, 113 S. Ct. 1471 (1993)........................3

*Shapiro v. Republic of Bolivia*, 930 F.2d 1013 (2d Cir. 1991) .....................................................19

*Schooner Exchange v. M'Faddon*, 11 U.S. 166, 3 L.Ed. 287 (1812) .............................................2

*Schubarth v. Fed. Republic of Germany*, 891 F.3d 392 (D.C. Cir. 2018) ...................4, 11, 12, 13

*Sierra Club v. Jackson*, 648 F.3d 848, 396 U.S. App. D.C. 297 (D.C. Cir. 2011) .................12, 13

*Simon v. Republic of Hungary*, 812 F.3d 127 (D.C. Cir. 2016).........................................11, 13, 16

*Simon v. Republic of Hungary*, 443 F.Supp. 3d 88 (D.D.C. 2020).............................................12, 16

*United States v. Belmont*, 301 U.S. 324, 81 L. Ed. 1134, 57 S. Ct. 758 (1937). ...........................5

*Valambhia v. United Re. Of Tanz.*, 964 F.3d 1135 (D.C. Cir. 2020)............................................13

*Verlinden B. V. v. Central Bank of Nigeria*, 461 U.S. 480, 76 L. Ed 2d 81, 103 S. Ct. 1962 (1983).........................................................................................................2, 3

*Yang Rong v. Liaoning Provincial Gov't*, 362 F. Supp. 2d 83 (D.D.C. 2005). ............................5

## CONSTITUTIONS, STATUTES AND RULES

8 USC §1101(a)(21)......................................................................................................................5, 6

28 U.S.C. §1330..........................................................................................................................2, 19

28 U.S.C. § 1602, *et seq*..............................................................................................................1, 9

28 U.S.C. §1603................................................................................................................................3

28 U.S.C. § 1605..............................................................................................................................4

28 U.S.C. § 1605(a)(3)..............................................................................................................1, 3, 4

28 U.S.C. § 1607................................................................................................................................3

American Military Government Abrogation Law No. 1, Military Government Gazette, Germany, U. S. Zone, Eastern Military District, No. 3, July 14, 1945, p. 44................................8

German Federal Budget Act of 2006, Art 1................................................................................15

Ordinance on Nationality in the State of Austria of 3 July 1938 (Verordnung über die Staatsangehörigkeit im Lande Österreich, RGBl. I, p. 790 ............................................................6

Art 116(1) German Constitution ...................................................................................15

Act on the Transition to Austrian Citizenship (Staatsbürgerschaftsüberleitungsgesetz, StGBl. 1945, 81........................................................................................................................8, 9

Fed. R. Civ. P 12(b)(1)..........................................................................................1, 2 19

Fed. R. Civ. P 12(b)(2)....................................................................................1, 18, 19

## OTHER AUTHORITIES

*Budget Review Germany* OECD Journal on Budgeting, Volume 2014 Issue 2 ............................15

Radbruch, Gustav, *Statutory Lawlessness and Supra-Statutory Law* (1946)', trans. Bonnie Litschewski Paulson and Stanley L. Paulson, in: Oxford Journal of Legal Studies 26 (2006), 1-11 .......................................................................................................7

Salwin, Lester N., *Uncertain Nationality Status of German Refugees,* 1824 Minnesota Law Review 1946, page 373....................................................................................6, 8

**DEFENDANT'S MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION AND PERSONAL JURISDICTION**

Come now the Defendant, the Federal Republic of Germany by counsel, and moves this Court to dismiss the Complaint 1) pursuant to Fed. R. Civ. P 12(b)(1) for lack of subject matter jurisdiction because the Defendant is immune from the jurisdiction of the courts of the United States pursuant to 28 U.S.C. 1602, *et. seq.,* the Foreign Sovereign Immunities Act ("the FSIA") and 2) pursuant to Fed. R. Civ. P 12(b)(2) for lack of personal jurisdiction.

The factual and legal bases for the motion are set out below in the Defendant's Memorandum of Law in Support of the Motion.

## <u>MEMORANDUM OF LAW</u>

The Complaint in this matter was filed on December 10, 2020, by Plaintiffs Sami Ambar, Laila Ambar, Shlomit Abrahamoff and Ariela Nurit Abrahamoff, the grandchildren of the late Salo Feuerwerk. Sami and Laila Ambar allege that they are United States Citizens who reside in New York. (Compl. ¶¶ 9,10); Shlomit Abrahamoff alleges that he is a dual citizen of the Netherlands and Israel and resides in Israel (Compl. ¶ 11) and Ariela Nurit Abrahamoff alleges that she is a dual citizen of the Netherlands and Israel who resides in the Netherlands. (Compl. ¶ 12) The Defendant, the Federal Republic of Germany, is a foreign state as that term is defined in the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602, *et. seq.* The Complaint alleges that the Defendant, who would otherwise be immune from jurisdiction in this Court under the FSIA, lost that immunity pursuant to the FSIA's so-called expropriation exception in violation of international law. 28 U.S.C. § 1605(a)(3).

## <u>The Alleged Facts Relevant to Defendant's Motion</u>

The Complaint alleges that the Plaintiffs are the heirs of Salo Feuerwerk from whom a building in Berlin was expropriated by the "Nazi Regime." (Comp. ¶ 57). According to the

Complaint, the building in question "fell under the control" of the German Democratic Republic (GDR) until the German Unification in 1990 and was subsequently owned by the Federal Republic of Germany which sold it in 2006. (Comp. ¶ 14).

Plaintiffs seek, among other things, damages as compensation for the taking of the building.

<u>Argument</u>

I. **The Complaint should be dismissed pursuant to Fed. F. Civ. P. 12(b)(1) for lack of subject matter jurisdiction as the Defendant is immune under the FSIA's broad grant of immunity to foreign states. The expropriation in violation of international law exception to that broad grant of immunity does not apply in this case.**

Historically foreign sovereigns and their agencies and instrumentalities had no right to any immunity in the Courts of the United States. *Schooner Exchange v. M'Faddon*, 11 U.S. 166, 3 L.Ed. 287 (1812). However, while not a matter of right, the United States did, as a matter of grace and comity, waive its right to exercise its jurisdiction over foreign sovereigns in certain cases. *Ibid.* The Courts historically deferred to the Executive Branch's determination as to whether to exercise or waive jurisdiction in cases involving foreign sovereigns. Until the early 1950s, the Executive Branch requested immunity for foreign sovereigns in all cases. *Verlinden B. V. v. Central Bank of Nigeria*, 461 U.S. 480, 486, 76 L. Ed 2d 81, 103 S. Ct. 1962 (1983). Thereafter the Executive Branch, acting through the Department of State, made inconsistent suggestions to the courts regarding sovereign immunity. In the wake of the resultant confusion and inconsistency, Congress acted in 1976 by enacting the FSIA.

The FSIA is the "sole basis for obtaining jurisdiction over a foreign state in our courts."[1].

---

[1] Plaintiffs allege that this Court has jurisdiction pursuant to 28 U.S.C. 1330. Section 1330 confers original jurisdiction on the district court only to the extent that "the foreign state is not entitled to immunity under" the FSIA.

2

*Nemariam v. Fed. Democratic Republic of Ethiopia*, 491 F.3d 470, 474, 377 U.S. App. D.C. 79,

83, (D.C. Cir. 2007) (*citing Argentine Republic v. Amerada Hess Shipping Corp*, 488 U.S. 428,

439, 109 S.Ct 683, 690, 102 L. Ed. 2d 818 (1989)). The broad grant of immunity is found in 28

U.S.C. §1603 and states:

> Subject to existing international agreements to which the United States is a party
> at the time of enactment of this Act [enacted Oct. 21, 1976] a foreign state shall
> be immune from the jurisdiction of the courts of the United States and of the
> States except as provided in sections 1605 to 1607 of this chapter.

As a foreign state, the Federal Republic of Germany is presumptively immune from suit

in the courts of the United States under the provisions of the FSIA unless a specified exception

applies.  *Saudi Arabia v. Nelson*, 507 U.S. 349, 355, 123 L. Ed. 2d 47, 113 S. Ct. 1471 (1993).

The exceptions to this broad grant are contained in 28 U.S.C. §1605.[2] These statutory

exceptions are the source of the federal district court's subject matter jurisdiction and "if no

exception applies, the district court has no jurisdiction." *Odhiambo v. Republic of Kenya*, 764

F.3d 31 (D.C. Cir. 2014); *cert. denied*, 2016 U.S. LEXIS 4064, 136 S. Ct. 2504, 195 L. Ed.2d

839 (2016).

> The statute [FSIA] must be applied by the district courts in every action against a
> foreign sovereign, since subject-matter jurisdiction in any such action depends on
> the existence of one of the specified exceptions to foreign sovereign immunity.
> [citation and fn omitted] At the threshold of every action in a district court against
> a foreign state, therefore, the court must satisfy itself that one of the exceptions
> applies -- and in doing so it must apply the detailed federal law standards set forth
> in the Act.

 *Verlinden B. V. v. Central Bank of Nigeria*, *supra* 461 U.S. at 483-484.

Section 1605 (28 U.S.C. §1605) contains a list of exceptions to the general grant of

immunity. Plaintiffs alleges that this case falls within the exception contained in 28 U.S.C. §

---

[2]Section 1607 which addresses counterclaims by foreign states is not implicated in the
instant motion.

3

1605(a)(3).

### A.  The "Expropriation" Exception.

The Plaintiffs allege the expropriation exception to the FSIA's broad grant of immunity applies. To establish subject matter jurisdiction over Germany, a foreign sovereign, pursuant to the expropriation or "takings" exception of the FSIA, a plaintiff must demonstrate each of four elements

> (1)    that rights in property are at issue,
>
> (2)    that the property was "taken,"
>
> (3)    that the taking was in violation of international law, and, where, as here, the defendant is a sovereign,
>
> (4)    that property or any property exchanged for said property is present in the United States in connection with a commercial activity carried on in the United States by the foreign sovereign.

28 U.S.C. §1605(a)(3).

The Complaint alleges that the expropriation of Mr. Feuerwerk's property violated international law, because (1) the property taken was the property of a citizen of another state (Compl. ¶ 20(A)), (2) the taking was part of a systematic genocide against the Jewish people (Compl. ¶ 20(B)), and (3) the taking violated various treaties (Compl. ¶20(C)).

"For the exception to apply, therefore, the court must find that: (1) rights in property are at issue; (2) those rights were taken in violation of international law; and (3) a jurisdictional nexus exists between the expropriation and the United States." S*chubarth v. Fed. Republic of Germany*, 891 F.3d 392 (D.C. Cir. 2018) (*quoting Nemariam v. Fed. Democratic Republic of Ethiopia,* 491 F.3d at 475).

4

United States courts have long recognized that the expropriation by a sovereign state of the property of its own nationals does not implicate settled principles of international law. *Chuidian v. Philippine Nat'l Bank*, 912 F.2d 1095, 1105 (9th Cir. 1990); *De Sanchez v. Banco Central de Nicaragua*, 770 F.2d 1385, 1396-98 (5th Cir. 1985); *Yang Rong v. Liaoning Provincial Gov't*, 362 F. Supp. 2d 83, 101 (D.D.C. 2005). Moreover, "confiscations by a state of the property of its own nationals, no matter how flagrant and regardless of whether compensation has been provided, do not constitute violations of international law." *F. Palicio y Compania, S.A. v. Brush*, 256 F. Supp. 481, 487 (S.D.N.Y. 1966), *aff'd*, 375 F.2d 1011 (2d Cir. 1967); *see also*, *United States v. Belmont*, 301 U.S. 324, 332, 81 L. Ed. 1134, 57 S. Ct. 758 (1937).

The Supreme Court in its recent *Philipp* decision eliminated any lingering doubt about the application of the takings rule when it made clear that the expropriation exception's "reference to 'violation of international law' does not cover expropriations of property belonging to a country's own nationals." *Fed. Republic of Germany v. Philipp*, ___ U.S. ___, 141 S. Ct. 703, 711, 208 L. Ed. 2d 589, 602 (2021).

### 1.     Salo Feuerwerk was a German National at the Time of the Taking

The Complaint alleges that property rights are at issue or that certain real property was taken by Germany. However, the victim of the taking, Mr. Salo Feuerwerk, was a German national at the time of the taking.

The Court in *Philipp* uses the term "national," but does not define the term. However, US federal law defines the term "national" in Title 8 of the United States Code to mean "a person owing permanent allegiance to a state." 8 U.S.C. §1101(a)(21) and states that citizens and noncitizens alike may be nationals of the United States: "The term 'national of the United States' means (A) a citizen of the United States, or (B) a person who, though not a citizen of the United

States, owes permanent allegiance to the United States." 8 U.S.C. §1101(a)(21).

When Salo Feuerwerk purchased the building, he was allegedly an Austrian citizen (Compl. ¶ 1).

In September 1935, the Reich Citizenship Law became effective. By its terms, "'Jews were reduced in status from full citizens (Reichsbuerger) to citizens second-class (Staatsangehoeriger), a term "commonly translated as 'national' or 'subject.'"  Salwin, Lester N., *Uncertain Nationality Status of German Refugees,* 1824 Minnesota Law Review 1946, page 373.[3]

When Nazi Germany annexed Austria in March 1938, Austria ceased to exist and became a German state, similar to Bavaria or Hesse. The de facto change of sovereignty with respect to Austrian national territory, which was incorporated into the German Reich in March 1938 lead to the Ordinance on Nationality in the State of Austria of 3 July 1938 (Verordnung über die Staatsangehörigkeit im Lande Österreich, RGBl. I, p. 790)[4];which states in its §1(2): "there shall exist only German nationality" ("Es gibt nur noch die deutsche Staatsangehörigkeit").

 Thus, Austrians lost their Austrian nationality and became German nationals. *Cf.* Compl ¶ 35. That included Mr. Feuerwerk, who according to the Complaint, was an Austrian national and apparently had no other citizenship or nationality until he passed away in 1942.

On November 25, 1941, the Nazi regime issued the Eleventh Regulation to the Reich Citizenship Law declaring that "all Jews maintaining an ordinary abode abroad were denationalized and their property confiscated." Salwin at p 374.

Thus, the Nazi regime purported to strip Mr. Feuerwerk of his German nationality

---

[3] https://scholarship.law.umn.edu/mlr/1824
[4] http://www.documentarchiv.de/ns/1938/deutsche-staatsangehoerigkeit-oest_vo.html

effective November 25, 1941, since he allegedly moved to Palestine in March 1940 (Compl. ¶ 55) where he remained until his death in 1942. The Complaint alleges that Mr. Feuerwerk, in accordance with the Eleventh Regulation to the Reich Citizenship Law, would have been a stateless person on November 27, 1941, when the building was officially taken (Compl ¶ 57).

However, the Reich Citizenship Law and its regulations are among the Nazi regime's laws and regulations that were declared invalid and unenforceable *ex tunc* by the German Constitutional Court because of their heinous and discriminatory character. BVerfGE 23, 98 BvR 557/62 (1968). These laws were held to conflict with justice at such an intolerable level that the laws become, in effect, "'false law' and must therefore yield to justice and can only be declared." Gustav Radbruch, *Statutory Lawlessness and Supra-Statutory Law* (1946),' trans. Bonnie Litschewski Paulson and Stanley L. Paulson, in: Oxford Journal of Legal Studies 26 (2006), 1-11, at 7.

The German Constitutional Court applied the so-called Radbruch Formula with regard to the Eleventh Regulation to the Reich Citizenship Law and ruled that the laws stripping the citizenship from German Jews on the basis of their religious belief and race as National Socialist "legal" regulations must not be recognized as valid law because they "contradict fundamental principles of justice so clearly that any judge who wanted to apply them or to recognize their legal consequences would pronounce injustice instead of right" and that those regulations are a "contradiction to justice that has reached such an unbearable level that it must be considered **null and void ab initio**. BVerfGE 23, 98 BvR 557/62 (1968) (citations omitted) (emphasis added)[5].

That principle was not only expressed by the German courts that recognized the need to void these laws ab initio. As Mr. Salwin explains in his article: "On September 18, 1944,

---

[5] The decision (in German) can be found at https://opinioiuris.de/entscheidung/1553

immediately upon our invasion of Germany, the American Military Government issued

Abrogation Law No. 1, revoking a series of discriminatory Nazi laws, including the citizenship

law of September 15, 1935,15 and the de- nationalization decree of November 25, 1941."

Salwin, *supra* at page 377. In a footnote he explains that the "Regulation issued under

Abrogation Law No. 1 listed the November 25, 1941, decree as being supplementary to the

Reich Citizenship Law and, therefore, "deprived of effect." Salwin at page 377 Fn. 16, *citing*

Military Government Gazette, Germany, U.S. Zone, Eastern Military District, No. 3, July 14,

1945, p. 44.

Accepting these laws and regulations as basis of a claim that a person was stripped of his

or her citizenship and nationality, cannot be justified. These laws and regulations controvert

fundamental principles of justice so clearly that they must be considered invalid *ex tunc* and

cannot be applied in this case.

Thus, the premise in the Complaint that Mr. Feuerwerk lost his citizenship and

nationality on the basis of these laws and regulation is incorrect. Mr. Feuerwerk still had his

German citizenship and nationality in 1941 when the building in Berlin was taken, as those laws

and regulations were and are invalid.

On July 10, 1945, the Republic of Austria enacted the Act on the Transition to Austrian

Citizenship (Staatsbürgerschaftsüberleitungsgesetz, StGBl. 1945, 81).[6] § 1 of the Act states in

relevant parts that Austrian citizens are, as of April 27, 1945 those persons who possessed

Austrian federal citizenship on March 3, 1938.

This 1945 Act did not affect the citizenship or nationality of any person during the time

period prior to April 27, 1945.  Thus, Mr. Feuerwerk was a German national at the time of the

---

[6] https://www.ris.bka.gv.at/Dokumente/BgblPdf/1945_59_0/1945_59_0.pdf

taking under both German and Austrian law.  Therefore, the expropriation of property belonging to Mr. Feuerwerk is the expropriation of a country's own national and, as such, is not subject to the taking exception to the FSIA. *See Philipp*, *supra* 141 S. Ct. at 711.  Since the expropriation exception's "reference to 'violation of international law' does not cover expropriations of property belonging to a country's own nationals," *Philipp, supra 141 S. Ct. 703, 711*, the expropriation exception is not applicable, and Germany's immunity stands.

### 2.   A Violation of Human Rights is not a Violation of International Law in the Context of the Taking Exception

The text of the FSIA's expropriation exception deals solely with property and property-related rights, injuries and acts associated with violations of human rights law, such as genocide, are not part of the expropriation exception. As the Supreme Court explained in *Philipp*, a statutory phrase concerning property rights most sensibly references the international law governing property rights, rather than the law of genocide. *Philipp*, *supra* 141 S. Ct. at 712. That interpretation is "more consistent with the FSIA's express goal of codifying the restrictive theory of sovereign immunity, 28 U. S.C. §1602, under which immunity extends to a sovereign's public, but not private, acts." *Philipp*, *supra* 141 S. Ct. at 713 (*citing Republic of Austria v. Altmann*, 541 U. S. 677, 690, 124 S. Ct. 2240 , 159 L. Ed. 2d 1 (2004)).

"It would destroy that distinction were we to subject all manner of sovereign public acts to judicial scrutiny under the FSIA by transforming the expropriation exception into an all-purpose jurisdictional hook for adjudicating human rights violations." *Philipp, supra 141 S. Ct. at 713* (*citing Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co*., 137 S. Ct. 1312, 1315, 197 L. Ed. 2d 663, 667 (2017)(" *Helmerich")* as rejecting the suggestion that Congress intended the expropriation exception to operate as a "radical departure" from the "basic principles" of the restrictive theory)

    **3.**      **A Violation of A Treaty is not Sufficient to Establish a Violation of International Law in the Context of the Taking Exception**

Plaintiffs fail to show that the treaties liberally listed in the Complaint speak to immunity of a foreign sovereign, and for good reason:  the domestic takings rule essential for the application of the taking exemption admits of no exception. *Ivanenko v. Yanukovich*, 995 F.3d 232 4 (D.C. Cir. 2021).

After all it "is the province of the FSIA, which provides the carefully constructed framework necessary for addressing an issue of such international concern. […] . We cannot permit […] to bypass its design." *Philipp, supra* 141 S. Ct. at 715.

    **4.**      **The Complaint Fails To Sufficiently Allege the Presence of the Property or Property Exchanged for the Property in the United States in Connection with Commercial Activity Carried On in the United States by Germany**

The Complaint fails to satisfy element 4(a) of the exemption rule and as such the Court lacks subject matter jurisdiction over the Defendant. Element 4(a) applies solely to a sovereign state and requires that the property or property exchanged for the property is present in the United States in connection with commercial activity of the foreign state in the United States. A foreign state retains its immunity unless the first clause of the commercial-activity nexus requirement in the taking exception is met. *De Csepel v. Republic of Hungary,* 859 F.3d 1094, 1107, 429 U.S. App. D.C. 342, 355 (D.C. Cir. 2017).

For this Court to have subject matter jurisdiction over the Federal Republic of Germany under the above-stated exception (identified above as element 4(a)), the Complaint must allege, with sufficient supporting facts, that the property or property exchanged for the property in question is present in the United States. *Schubarth*, *supra* 891 F.3d at 401.

Applying the proper standard to review the adequacy of the allegations in the Complaint

is crucial in this case.  It appears that the Plaintiffs have patterned their allegations after those in a prior case, namely *Simon v. Republic of Hungary*, 812 F.3d 127 (D.C. Cir. 2016).  In *Simon*, the D.C. Circuit held that generalized allegations that the sovereign had "liquidated the stolen property, mixed the resulting finds with their general revenues, and devoted the proceeds to funding various governmental and commercial operations" was adequate because it "raise[d] a plausible inference that the defendants retain the property or proceeds thereof. . . ."  *Ibid*, 812 F.3d at 147. In other words, a "plausibility" standard was applied in *Simon*.

The Supreme Court in *Helmerich***,** adopted a new and more demanding standard for reviewing the adequacy of allegations in support of the applicability of the expropriation exception to the FSIA: that jurisdictional facts are sufficiently pled "**only if they do show (and not just arguably show)"** the facts necessary to support jurisdiction. *Helmerich*, *supra* 137 S. Ct. at 1324 (emphasis added).  *Owens v. Republic of Sudan*, 864 F.3d 751, 779 (D.C. Cir 2017), *vacated and remanded on other grounds sub nom. Opati v. Republic of* Sudan, ___ U.S. ___, 140 S. Ct. 1601, 206 L. Ed. 2d 904 (2020) ("*Owens*"), a post-*Helmerich* case in this Circuit, has applied the standard promulgated in *Helmerich*, stating that the Circuit's previously binding precedent had been overruled. *Owens v. Republic of Sudan*, 864 F.3d at 779 (emphasis added). ("Since that decision, the Supreme Court has overruled the precedent upon which the district court relied, **requiring a plaintiff to prove the facts supporting the court's jurisdiction under the FSIA**, rather than simply to make a 'non-frivolous' claim to that effect.").  Thus, *Owens* announced a new pleading standard that requires substantially more than simply alleging facts which may be "plausible."

"It is fixed law that 'this Court is bound to follow circuit precedent until it is overruled either by an en banc court or the Supreme Court.' *Maxwell v. Snow*, 409 F.3d 354, 358 (D.C. Cir.

11

2005). Therefore, when a decision of one panel is inconsistent with the decision of a prior panel, the norm is that the later decision, being in violation of that fixed law, cannot prevail." *Sierra Club v. Jackson*, 648 F.3d 848, 854, 396 U.S. App. D.C. 297, 303 (D.C. Cir. 2011); *De Csepel v. Republic of Hungary*, *supra* 859 F.3d at1105.

Counsel for Germany are aware of four post-*Owens* reported cases in this Circuit which applied the "plausible" test to determine whether a complaint's allegations are sufficient to defeat sovereign immunity under the FSIA.  Three of these cases are from the D.C. Circuit.[7]  One is a case from the District Court in the District of Columbia.[8]  None of those cases indicates that the court was aware of, no less considered the impact of, the holding in *Owens* that *Helmerich* has raised the standard to require that the complaint "prove facts supporting the court's jurisdiction under the FSIA."  Indeed, none of them even cited *Owens.* Only the District Court's 2020 decision in *Simon* even considered the argument that *Helmerich* had established a new and heightened pleading standard.  However, it did so only in a footnote and rejected the argument, relying on the D.C. Circuit's decision in *Schubarth*, as well as a District Court decision in the Southern District of New York, *Rukoro v, Fed, Repub. Of Germany,* 363 F.Supp. 3d, 436, 448-49 (S.D.N.Y. 2019).  As will be described below, the Second Circuit recently has expressly rejected the district court's reasoning in *Rukoro* and has held that the "plausible" standard has been supplanted by a heightened standard announced in *Helmerich*.

The *Owens* panel decision clearly held that *Helmerich* had overruled earlier D.C. Circuit cases and established a higher standard: the plaintiff must "prove the facts supporting the court's

---

[7] *Schubarth v. Fed. Republic of Germany*, *supra* 891 F.3d at 398; *Valambhia v. United Re. Of Tanz.*, 964 F.3d 1135, 1139 (D.C. Cir. 2020), *EIG Energy Fund IV, LP v, Petroleo Brasileiro, SA*, 894 F.3d 339, 344 (D.C. Cir. 2020).
[8] *Simon v. Republic of Hungary*, 443 F.Supp. 3d 88, 102 (D.D.C. 2020).

jurisdiction under the FSIA," and not the "plausible" standard used in the pre-*Helmerich Simon* case.  Owens, *supra* 864 F.3d at 779.  That heightened standard announced in the *Owens* panel decision has not been overruled by either an en banc court or the Supreme Court and this Court is bound to follow it.  *Maxwell v. Snow*, *supra* 409 F.3d at 358. The later decisions in this Circuit which are inconsistent with the *Owens* decision are in violation of that fixed law and cannot prevail.  *Sierra Club v. Jackson*, *supra,* 648 F.3d at 854; *De Csepel v. Republic of Hungary*, *supra,* 859 F.3d at 1105.

As noted above, the Second Circuit in *Rukoro* recently has also held that that "plausible" standard applied in *Simon* has been supplanted by a higher "legally valid claim" standard announced in *Helmrich*.  *Rukoro v. Fed. Republic of Germany*, 976 F.3d 218 (2nd Cir. 2020) *cert denied*  No. 20-1454, 2021 BL 209875 (U.S. June 07, 2021). In doing so, the Second Circuit applied a higher "valid argument" standard to find the *Rukoro* plaintiffs' comingling allegations were inadequate: stating that plaintiffs' allegations **may satisfy a plausibility standard, but not a valid argument standard**.  *Rukoro v. Fed. Republic of Germany*, supra 976 F.3d at 225 (emphasis added).  Thus, the Second Circuit in *Rukoro* clearly held, in agreement with the D.C. Circuit in *Owens*, that the *Simon* "plausibility" standard is no longer applicable in FSIA cases post-*Helmerich*.

In the instant case, there can be no question that the property at issue, real estate in Berlin, Germany, is not now and never was present in the United States. Thus, the question is whether the factual allegations in Plaintiffs' complaint are sufficient to "prove the facts" supporting the court's jurisdiction under the FSIA, namely that the property was exchanged for property which is present in the United States in connection with commercial activity of Germany in the United States so as to allow the application of the FSIA's expropriation

exception. *Helmerich,* 137 S. Ct. at 1316. Or as, the Second Circuit put it, do the allegations meet the "valid argument standard." *Rukoro v. Fed. Republic of Germany*, 976 F.3d at 225.

While Plaintiffs' Complaint avoids simply repeating the statutory language with no supporting facts whatsoever, the mere stringing together of broad statements and allegation which seemingly include any and all activity that may possibly have commercial character by anyone with a connection with Germany does not "prove the facts" supporting the court's jurisdiction under the FSIA. It rather is a slightly more elaborate attempt to simply to meet the now inoperative "plausible" standard, which cannot suffice. *Owens, supra* 864 F.3d at 779 (D.C.), *citing, Helmerich*, 137 S. Ct. at 1316; *Rukoro v. Fed. Republic of Germany*, *supra* 976 F.3d at 225.

The Complaint alleges that the sales price received from the property and the income realized from it prior to the sale were commingled with other revenues of the Federal Republic of Germany. These revenues in turn, again according to the Complaint, were used in a number of alleged commercial activities (Compl ¶ 21(C).

The Plaintiffs' allegations do not even meet the "plausible" standard, no less the current higher "prove the facts supporting the court's jurisdiction under the FSIA" standard or, as the Second Circuit put it, the "valid argument" standard. While it is correct as a general statement that the proceeds from the sale of the property, as well as rental income generated by the property prior to its sale became part of the German budget, it is not correct to presume that the proceeds were "devoted to funding various commercial operations" (Compl ¶ 21(B)). The Federal Republic of Germany's income is not dedicated for a specific purpose. The German Basic Law (the equivalent of the US Constitution) states in its Art 116(1) that "all revenues and expenditures of the [Federal Republic of Germany] shall be included in the [federal] budget". Art

116(1) German Constitution[9]. The German federal budget in 2006 was € 216,600,000,000. Art 1

German Federal Budget Act of 2006[10].  The income realized by the Federal Republic of

Germany in 2006 was just under € 29 Billion (approximately $39 Billion at that time) (excluding

tax related income). The numbers for 2007 and 2008 are in the same range. The Complaint does

not allege for how much the Berlin property was sold but claims that the value was

approximately $1.4 Million in 2006, the year of the sale (Compl ¶ 71).  The Complaint also

states in a conclusory fashion that the funds were commingled with the general revenue of the

Federal Republic of Germany. *Ibid.*

What the Complaint fails to do is state how the sales proceeds could have possibly been

used in any of the various activities the Complaint alleges are commercial. The mere fact, that

the relatively small ($1.4 million) proceeds were part of Germany's federal budget in the years in

question ( $39 Billion in income in 2006 alone) is and cannot be sufficient. The mere (and

incredibly removed) alleged possibility that the use of the sales proceeds as part of Germany's

general revenues in its treasury should be enough to treat any state-owned property in the United

States as "exchanged" for expropriated property would expand the expropriation exception far

beyond its intended limits as to be unrecognizable.

In particular here, where conclusory allegations in the Complaint claim the comingling

with other monies in Germany's general treasury account for the use of very broadly and vaguely

described activities of the Federal Republic of Germany in the United States, most of which are

---

[9] https://www.gesetze-im-internet.de/englisch_gg/englisch_gg.html#p0659.
A summary of the German budget process can be found in *Budget Review Germany* OECD
Journal on Budgeting, Volume 2014 Issue 2 at https://www.oecd.org/gov/budgeting/Budget-
Review-Germany.pdf
[10]www.bundesfinanzministerium.de/Content/DE/Standardartikel/Themen/Oeffentliche_F
inanzen/Bundeshaushalt/Haushalts_und_Vermoegensrechnungen_des_Bundes/2006-
haushaltsrechnung-und-vermoegensrechnung.pdf?__blob=publicationFile&v=2

not even commercial in nature by an stretch of the imagination, simply do not suffice to "prove the facts supporting the court's jurisdiction under the FSIA" or make a "valid argument" that any property exchanged for the real estate in Berlin can be traced to a commercial activity of the Federal Republic of Germany in the United States. [11]

      The Second Circuit's recent decision in *Rukoro v. Fed. Republic of Germany*, *supra*, specifically held that generalized allegations of comingling did not meet the heightened "valid argument" pleading standard mandated by *Helmerich* and specially rejected *Simon 1's* holding that a generalized comingling allegation was sufficient:

> In finding these [comingling] allegations sufficed, the district court relied in part on *Simon v. Republic of Hungary* , 812 F.3d 127 (D.C. Cir. 2016). There, the court allowed plaintiff to proceed based on allegations that the sovereign "liquidated the stolen property, mixed the resulting funds with their general revenues, and devoted the proceeds to funding various governmental and commercial operations," which it concluded "raise[d] a plausible inference that the defendants retain the property or proceeds thereof, absent a sufficiently convincing indication to the contrary." *Simon* , 812 F.3d at 147 (internal alteration and quotation marks omitted). However, *Simon* predates *Helmerich*, calling into question its use of a plausibility standard.
>
> The conclusory allegations in the amended complaint simply do not suffice to make a valid argument that property converted into currency and comingled with other monies in Germany's general treasury account can be traced to the purchase of property in New York decades later. The Smith Declaration fails to sufficiently bolster the allegations, as it states it is merely a "reasonable presum[ption]" that comingled funds were used to buy the

---

[11]   The 2020 District Court decision in *Simon*, described *supra*, recognized the problematic nature of the D.C. Circuit's prior decision in a prior appeal in the case (*Simon v. Republic of Hungary*, 812 F.3d 127, (D.C. Cir. 2016) referred to by the district court as "Simon I") that the allegations of comingling of the proceeds in the coffers of a foreign sovereign was sufficient to raise a plausible inference retained some portion of the expropriated property and that this portion was present in the United States in connection with commercial activity of the sovereign.  *Simon v. Republic of Hungary*, *supra*, 443 F. Supp.3d at 103 and note 10.  The district court held that, despite its misgivings, "Nonetheless *Simon* I is binding on this Court." *Ibid*. The district court explained that *Simon I* was binding under the law of the case doctrine. *Simon v. Republic of Hungary*, *supra*, 443 F. Supp.3d at 111-112.  The law of the case doctrine does not apply in the instant case.

properties. App'x at 302 ¶ 12. Such allegations may satisfy a plausibility standard, but not a valid argument standard. There may be circumstances where it is possible to trace the proceeds a sovereign received from expropriated property to funds spent on property present in the United States, but such circumstances are not present here.

*Rukoro v. Fed. Republic of Germany*, *supra*, 976 F.3d at 225-226.

As mentioned above, the Complaint alleges various activities as "commercial activities". (Compl. ¶ 21(C)). However, the allegations listed in the Complaint under Compl ¶ 21(C) (ii – vi) simply are not commercial activities engaged in by the Federal Republic of Germany in the United States. The mere statements in (ii), (v), (vi) and (xii) that the Federal Republic of Germany and the United States have close ties and are important business partners does not allege a specific commercial activity by the Federal Republic of Germany itself; (ii) and (iv) are on their face not commercial activities, (iii) is unrelated to the activities of the Federal Republic of Germany. Subparagraphs (i), (ix) and (xi), do not allege that the activities take place in the United States and (vii) only lists a link to the International Trade Administration's web site on how to sell goods and services to German government entities, which is not sufficient. The mere claim that commercial activities are possible (and may occur in Germany) is not enough. Subparagraph (viii) fails to explain how the income realized from and the sale of the property could possibly end up in a US bank deposit.

Plaintiffs must do more than recite a generalized litany of activities which may or may not be commercial in nature and claim more than a mere allegation of commingling of funds. Allowing otherwise would violate the requirement of a narrow application of the exception to foreign sovereign immunity. The Supreme Court has held that foreign sovereign immunity should be dealt with "as near to the outset of the case as is reasonably possible," as "foreign sovereign immunity's basic objective" is "to free a foreign sovereign from suit." *Helmerich*, 137

17

S. Ct. at 1317. Plaintiffs' conclusory allegations in the Complaint simply do not suffice to "prove facts supporting jurisdiction under the FSIA," *Owens*, *supra* 864 F.3d at 779, or make a "valid argument" that property converted into currency and comingled with other monies in Germany's general treasury account can be traced to the purchase of property, *Rukoro v. Fed. Republic of Germany, supra* 976 F.3d at 225.

The Complaint does not (and cannot) claim that the real property at issue is or ever was in the United States; fails to sufficiently state that property exchanged for the property is present in the United States; or that the property is present in the United States **in connection with**[12] commercial activity. (emphasis added). The Complaint completely fails to "**prove the facts supporting the court's jurisdiction under the FSIA** . . . ." (emphasis added), *Owens*, *supra*, 864 F.3d at 779, *citing*, *Helmerich*, *supra.* 137 S. Ct. at 1316. Because the factual allegations in the Plaintiffs Complaint are deficient, there is no subject matter jurisdiction over the Federal Republic of Germany under the expropriation exception to the FSIA broad grant of immunity.

## II.     The Complaint Should be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(2) for Lack of Personal Jurisdiction

Under the FSIA, personal jurisdiction equals subject matter jurisdiction plus valid service of process. 28 U.S.C. 1330(b); *I.T. Consultants, Inc. v. Islamic Republic of Pak.*, 351 F.3d 1184, 1191 (D.C. Cir. 2003); *Reiss v. Societe Centrale Du Groupe Des Assurances Nationales*, 235 F.3d 738, 746 (2d Cir. 2000); *Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1020 (2d Cir. 1991). As demonstrated above, Plaintiff has failed to establish subject matter jurisdiction by

---

[12] "The statutory term 'in connection,' as used in the FSIA, is a term of art, and we interpret it narrowly. Accordingly, we have noted that 'acts are in connection' with commercial activity so long as there is a 'substantive connection' or a 'causal link' between them and the commercial activity." *Garb v. Republic of Poland*, 440 F.3d 579, 587 (2nd Cir. 2006) (citations omitted).

establishing that one of the enumerated statutory exceptions to sovereign immunity applies. Hence, the Complaint fails to establish subject matter jurisdiction, which is the first part of the two-part test for personal jurisdiction under the FSIA. The second prong of the test is that there be valid service which has been accomplished. The Court does not have personal jurisdiction over the Defendant, as it does not have subject matter jurisdiction even though service of process was sufficient. The Court should dismiss the complaint pursuant to Fed R. Civ. P. 12(b)(2).

## CONCLUSION

The Federal Republic of Germany is immune under the FSIA, as the expropriation exception does not apply. The owner of the property expropriated in 1941 was a German national at that time.  In addition, the expropriation exception also does not apply as the Complaint does not "prove the facts supporting the court's jurisdiction under the FSIA," namely that that the property or property exchanged therefore is present in the United States in connection with commercial activity in the United States.  In addition, the Court does not have personal jurisdiction over the Defendant, as it does not have subject matter jurisdiction even though o service of process was sufficient. Therefore, the Court should dismiss the Complaint pursuant to Fed. R. Civ. P 12(b)(1) and 12(b)(2).

Dated: June 21, 2021          s/ *Walter E. Diercks*
                       Walter E. Diercks, Esq.
                       Max Riederer von Paar, Esq.

                       RUBIN, WINSTON, DIERCKS, HARRIS &
                         COOKE, LLP
                       1250 Connecticut Avenue, N.W., Ste 700
                       Washington, D.C. 20036
                       (202) 861-0870/(202) 288-4500
                       wdiercks@rwdhc.com

                       Attorneys for Defendant
                       The Federal Republic of Germany